IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS CENTER FOR OBESITY SURGERY, P.L.L.C, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:13-CV-0922-M |
| UNITEDHEALTHCARE OF TEXAS INC., UNITEDHEALTHCARE SERVICES, INC., and SPECTRA INC., | § § § § § | |
| Defendants | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Remand [Dkt. Entry #8] filed by Plaintiff Texas Center for Obesity Surgery, P.L.L.C ("Plaintiff" or "TCOS"). Defendants UnitedHealthCare of Texas, Inc., UnitedHealthCare Services, Inc., and Spectra Inc., ("UHC" or "Defendants"), removed the case to federal court, and oppose the Motion.

Having considered the arguments of both parties and the applicable law, the Court **GRANTS** Plaintiff's Motion.

### I. BACKGROUND

**A. Initial Dispute**

This is a dispute over Plaintiff's 57 claims for more than $901,021.00 for reimbursement for services performed by surgical assistants during gastrectomy surgeries in 2011 and 2012 . In its suit, TCOS asserted state law causes of action against UHC for intentional misrepresentation, constructive fraud, negligent misrepresentation, promissory estoppel, and violations of the Texas

Insurance Code. *Pl.'s Pet.* ¶¶ 17-51. Defendants removed the case to federal court based on complete preemption under the Employee Retirement Income Security Act of 1974 ("ERISA").

TCOS obtained assignments from its patients for benefits under their health plans and sought reimbursement from UHC. The patients' health plans are governed by ERISA. 29 U.S.C. §§ 1001 *et seq.* TCOS alleges that prior to each of the surgeries, UHC guaranteed that the services of TCOS surgical assistants would be covered, but that UHC then improperly denied or delayed payment of such claims. Prior to 2011, UHC made payments to TCOS for use of surgeons' assistants during similar surgeries. *Pl.'s Pet.* ¶ 11. TCOS also contends that during 2011, all other major health insurers continued to compensate TCOS for surgeons' assistants after approving the surgery. *Id*. TCOS argues that if the use of a surgeons' assistant was found to be medically necessary in one gastrectomy, as confirmed by UHC's pre-approval of it, UHC cannot legitimately claim that the use of a surgeons' assistant was not medically necessary in later similar surgeries. *Pl.'s Pet.* ¶ 14.

TCOS argues that the face of the Petition provides no basis for federal jurisdiction because it makes no claims under ERISA, and that ERISA does not preempt an independent health care provider's claims based on negligent misrepresentations about coverage. Defendants respond that the Court has federal jurisdiction because TCOS's allegations raise claims that are broader than mere claims of misrepresentations about coverage. TCOS also sues for bad faith claims handling and delay for claims untimely paid. Defendants argue that because TCOS is not the insured, TCOS is seeking to enforce the rights of ERISA-plan members derivatively, and thus ERISA completely preempts the claims.

**B. The Health Plans**

Several of TCOS's claims were processed and/or paid under employer sponsored health benefit plans ("Plans"). *See Defs.' App*. at 4-5; 31-330 (including two of the subject Plans). By way of example, two of the Plans were established and maintained by Texas Health Resources, Inc. ("THR") and Azko Nobel, respectively, for the benefit of their employees. *Defs.' App*. at 31-200, 201-330.

As assignee of its patients' benefits, TCOS routinely submitted claims for benefits under its patients' Plans. Four of the claims in dispute, submitted under the THR or Azko Nobel Plans, are illustrative. In all four cases, TCOS used a standardized electronic claim form to submit the claims to UHC. *See Defs.' App*. at 5 ¶ 8; 6, 10, 13-14, 17. On each, TCOS represented it had an assignment from the patient and could obtain any benefits payable under the patient's Plan. *Id*. at 5 ¶ 8.

On or about December 27, 2010, TCOS submitted the first of the four illustrative claims for services to a member of the THR Plan. UHC initially denied the claim, allegedly because the services were reported under a procedure code that was not reimbursable for a surgeons' assistant. *Defs.' App*. at 4 ¶ 4; 6-7. That decision was later reconsidered, and UHS paid TCOS $15,799.67. *Id.* at 8-9. UHC denied the second and third claims TCO submitted, allegedly because the listed procedure code on the claim was not an eligible expense for a surgeons' assistant. *Defs.' App*. at 4 ¶ 6-7; 13-20. As for the fourth claim, for services rendered to a THR Plan member on or about April 2, 2012, UHC denied the claim, allegedly because the listed procedure code was not an eligible expense. *Defs.' App*. at 4 ¶ 5; 10-12.

## II. LEGAL STANDARDS

### A. ERISA Qualifications

The first issue is whether the Plans are ERISA employee welfare benefit plans. *See Paragon Office Services*, *LLC v. UnitedHealthGroup, Inc.,* 2012 U.S. Dist. LEXIS 41793, at \*12 (N.D. Tex. March 27, 2012) (Fitzwater, C.J.). Here, neither party disputes that the Plans are ERISA plans, funded by employers and providing health benefits for their employees.

The next issue is whether TCOS has standing. TCOS obtained assignments of benefits from fifty-seven subscribers, but based its five causes of action on UHC's alleged misrepresentations made to it. Had TCOS chosen to sue for claims under ERISA, it would have derivative standing to do so under these circumstances. *See Quality Infusion Care, Inc. v. Humana Health Plan of Texas, Inc*., 290 F. App'x 671 (5th Cir. 2008) (a healthcare provider may obtain derivative standing to enforce an ERISA plan beneficiary's claim); *Paragon Office Services*, 2012 U.S. Dist. LEXIS 41793, at \*14-15 (proof of assignments sufficient to demonstrate derivative standing to sue under ERISA). In fact, however, TCOS asserted no claims in its capacity as an assignee.

### B. Complete Preemption v. Conflict Preemption

The Court may exercise federal-question jurisdiction if the case presents any issues "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C.A. § 1331. The presence or absence of federal-question jurisdiction is governed by the well-pleaded-complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank,* 522 U.S. 470, 475, 118 S.Ct. 921 (1998). "There is an exception to the well-pleaded-complaint rule, though, if Congress so completely preempts a particular area that any civil complaint raising this select group

of claims is necessarily federal in character." *Arana v. Ochsner Health Plan,* 338 F.3d 433, 437 (5th Cir. 2003) (en banc) (citations omitted) (internal quotation marks omitted).

The burden of establishing federal jurisdiction is on the party seeking removal. *Miller v. Diamond Shamrock Co.,* 275 F.3d 414, 417 (5th Cir. 2011). Removal jurisdiction is to be construed strictly because it implicates important federalism concerns. *HDNet MMA LLC v. Zuffa, LLC*, 2008 WL 958067, *2 (N.D. Tex. April 9, 2008) (Fish, J.). Doubts concerning removal are to be resolved against removal and in favor of remand. *Id.*

There are two types of preemption under ERISA: complete preemption and conflict preemption. Complete preemption arises under ERISA § 502, the statute's civil-enforcement provision. If a state law claim is completely preempted by § 502, it is transformed into a new federal claim, giving the federal court subject matter jurisdiction. *Aetna Health v. Davila*, 542 U.S 200, 207-08. A claim is completely preempted by ERISA when (1) the plaintiff at some point could have brought his claim under ERISA § 502(a)(1)(B), and (2) no other independent legal duty is implicated by a defendant's actions. 542 U.S. 200, 210 (2004). "Put simply, there is complete preemption jurisdiction over a claim that seeks relief 'within the scope of the civil enforcement provisions of § 502(a)'" because "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Metro. Life Ins.*, 481 U.S. 58, 66 (1987).

Conflict preemption, also known as ordinary preemption, arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim. *Arana v. Ochsner Health Plan,* 338 F.3d 433, 439 (5th Cir. 2003). "Rather than transmogrifying a state cause of action into a federal one—as occurs with complete preemption—conflict

preemption serves as a defense to a state action." *Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 336-38 (5th Cir. 1999). If a complaint raises completely-preempted claims and conflict-preempted claims, the court may exercise removal jurisdiction over the completely-preempted claims and supplemental jurisdiction over the balance. *Id*. at 337-38.

Many courts have determined that Congress intended ERISA to fully occupy the field of disputes involving employee welfare benefit plans. *See Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 90, (1983); *Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002); *Westfall v. Bevan*, 2009 WL 111577, at *3 (N.D. Tex. Jan. 15, 2009) (Fitzwater, C.J.). Whether or not a state court petition mentions a benefit plan, the court must still consider the substance of the plan to see if ERISA preemption applies. *See Meyers v. Tex. Health Res*., 2009 U.S. Dist. LEXIS 104609, at *13 (N.D. Tex. Nov. 9, 2009) (Fitzwater, C.J.); *see also Roark v. Humana, Inc*., 2001 WL 585874, at *1 (N.D. Tex. May 25, 2001) (Fitzwater, C.J.).

A plaintiff cannot circumvent the preemptive reach of ERISA by artful pleading. The Fifth Circuit, in an unpublished opinion, confronted the issue of artful pleading in *Wilson v. Kimberly-Clark Corp.*, where employees filed a state suit, claiming that the employer had wrongfully denied them severance pay. 254 Fed. Appx. 280 (5th Cir. 2007) (per curiam) (unpublished). The employer removed the case, and the district court denied the employees' motion to remand, based on ERISA preemption. The Fifth Circuit held that the district court properly refused to remand because a specific examination of the plan's language was inextricably tied to the underlying claims.[1]

---

[1] "Defendant . . . has shown that it follows specific administrative procedures under a clearly-defined plan in distributing severance benefits. Where other employers have similarly operated severance pay pursuant to a plan—providing the terms in an employees' handbook and policy manual and setting forth eligibility criteria—we and other circuits have found that the plan squarely falls under ERISA, despite being funded by an employer's general resources rather than a specific trust fund." *Id.* at *6-7.

Therefore, the fact that the plaintiffs did not mention ERISA in their complaint was immaterial: "Plaintiffs, by avoiding any mention of a 'plan' in the proceedings, could not avoid the fact that the very severance benefits they claimed had been wrongfully denied were disbursed pursuant to a plan." *Id.* at 286. "In other words, even if the plaintiff did not plead a federal cause of action on the face of the complaint, the claim is necessarily federal in character if it implicates ERISA's civil enforcement scheme." *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (internal citations and quotation marks omitted).

### III. DISCUSSION

#### 1. *Memorial, Transitional* **and** *Access Mediquip*

Three key Fifth Circuit cases deal with the intersection between medical providers' claims and ERISA: *Memorial Hosp. Sys. V. Northbrook Life. Ins. Co.*[2], *Transitional Hosps. Corp. v. Blue Cross & Blue Shield, Inc.*,[3] and *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*[4] *Memorial* was decided in 1990, *Transitional* followed nine years later, and both were expressly reaffirmed in last year's en banc, per curiam opinion, reinstating the panel opinion in *Access Mediquip*.

##### a. *Memorial*

In *Memorial*, the Fifth Circuit applied both complete preemption as addressed by ERISA § 502(a), and conflict preemption under § 514. It held that a hospital's contract claim as an assignee of the plan member's benefits under an ERISA-governed plan was preempted under both standards, but that a Texas Insurance Code claim for misrepresentation about the terms of the

---

[2] 904 F.2d 236 (5th Cir. 1990) ("*Memorial*")
[3] 164 F.3d 952 (5th Cir. 1999) ("*Transitional*").
[4] 662 F.3d 376 (5th Cir. 2011) (claim-by-claim examination of whether each claim was "dependent on and derived from the rights of" plan members), *vacated and reh'g granted by,* 678 F.3d 940, *reinstated on reh'g by,* 2012 U.S. App. LEXIS 20809 (Oct. 5, 2012) (en banc), *cert. denied*, No. 12-806, 2013 U.S. LEXIS 1850 (Feb. 25, 2013) (collectively, "*Access Mediquip*").

coverage was not preempted by either. *Memorial*, 904 F.2d at 250. *Memorial* shows that the claims must be examined separately, and those that do not depend on the medical provider standing in the shoes of the plan member escape complete preemption (but not necessarily conflict preemption). *Id.* at 250. Additionally, *Memorial* held that unless the medical provider can assert state court claims independent of its rights under ERISA, such claims are completely preempted. *Id.* ("The [Texas Insurance Code] claim is . . . independent of the plan's actual obligations under the terms of the insurance policy and in no way seeks to modify those obligations."). Finally, and most importantly, the *Memorial* court implied that if the hospital had alleged the defendant had "acted improperly in processing and denying [the provider's] claim," ERISA would completely preempt the claim. *Id.* at 248.

### b. *Transitional*

As was the case in *Memorial*, the plaintiff in *Transitional* was a hospital asserting claims for benefits under ERISA, and for breach of contract and misrepresentation. 164 F.3d at 953. The defendants removed the case to federal court based on complete preemption under ERISA § 502(a). *Id.* at 955. The district court found complete preemption, and concluded the plan administrator had not acted arbitrarily or capriciously by following the plan. *Id.* at 956. The Fifth Circuit affirmed the trial court, except as to the misrepresentation claim.

The hospital alleged the defendant misrepresented that the plan would pay 100% of charges after Medicare benefits were exhausted. The Fifth Circuit examined whether such claims were dependent on and derivative of the plan members' rights to benefits under the plan. Focusing on the allegations that defendants misrepresented "that Davis is not covered by the Policy," the Fifth Circuit concluded the hospital's claim was independent of ERISA, and not preempted.

### c. *Access Mediquip*

While *Memorial* and *Transitional* dealt with complete preemption, *Access Mediquip* involved a summary judgment granted to the defendant based solely on conflict preemption under ERISA § 514(a). 662 F.3d at 382-83. Access procured medical devices to be implanted in participants in an ERISA plan. Prior to doing so, it contacted UHC to determine whether it covered the devices and the procedures for the participants. Representatives of UHC confirmed the participants' coverage for the devices and procedures and gave Access authorization codes to use for reimbursement. However, Access never received reimbursement, because the plan denied all claims for surgically-implanted devices that were placed at non-surgical facilities.

The Fifth Circuit concluded that a claim based solely on a misrepresentation about the terms of coverage was a state law claim, independent of ERISA:

> The finder of fact need only determine (1) the amount and terms of reimbursement that Access could reasonably have expected given what could fairly be inferred from the statements [about coverage] and (2) whether United's subsequent disposition of the reimbursement claims was consistent with that expectation.

*Id*. at 385. The court reached the conclusion that Access's state law claims for negligent misrepresentation, promissory estoppel and violations of the Texas Insurance Code were not preempted by ERISA. *Id.* at 387.

In essence, *Access Mediquip* confirmed that a claim based solely on misrepresentations by the insurer to the provider is not preempted by ERISA. The Fifth Circuit clarified that the dispositive issue was that the state law claims were not "dependent on, and derived from the rights of [plan members] to recover benefits under the terms of their ERISA plans, but rather on the defendants' misleading representations regarding the extent that the plan would reimburse [the provider] for its services." 662 F.3d at 383. In contrast, while an ERISA plan could presumably avoid liability for misrepresentations by ensuring the accuracy of what it tells providers, the court

acknowledged the same is not true for other types of state law claims, such as quantum meruit and unjust enrichment. *Id*. at 386-87. The Fifth Circuit, in holding the plaintiff's quantum meruit claim preempted, explained:

> Those claims, if not preempted, would allow any provider who has provided care for which the ERISA plan denied coverage to challenge the ERISA plan's interpretation of its policies in state court. That outcome would run afoul of Congress's intent that the causes of action created by ERISA be the exclusive means of enforcing an ERISA plan's terms, and permit state law to interfere with the relations among ERISA entities.

*Id.*

This Court must decide whether Plaintiff's claims challenge a coverage decision or plan interpretation, or allege affirmative misrepresentations by UHC. The Court must also be guided by whether "the claims directly affect the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Memorial,* 904 F.2d at 245. Plaintiff's Complaint states that its reliance on UHC's alleged misrepresentations is the "but for" cause of their claims, while Defendants deny that coverage exists for the use of a surgeons' assistant. Ultimately, however, this is not a case about the interpretation of a plan, but rather, it is about alleged affirmative representations before the subject surgeries that caused TCOS to use a surgeons' assistant and expect to be reimbursed for that. This case falls squarely within the state law exception outlined by *Memorial, Transitional* and *Access*. As in *Transitional*, TCOS's claims for misrepresentation are based on alleged statements made by UHC, and are claims independent of ERISA. Further, this case does not directly affect the relationship between the parties as ERISA participants. Therefore, preemption does not apply.

### *2. SCCI Hospital Ventures, Inc.*

In *SCCI Hospital Ventures, Inc.*, Judge Solis granted a motion to remand that is nearly identical to that before this Court. *See SCCI Hospital Ventures, Inc. d/b/a Triumph Hospital*

*Amarillo v. United Healthcare of Texas, Inc., et al.*, No. 3:10-CV-2266 (N.D. Tex. Feb. 2, 2011) ("*SCCI*"). In response to SCCI's Motion to Remand, UHC argued that "Plaintiff's claims, while artfully couched in state-law terms, are completely pre-empted by ERISA and are properly before this Court." (Case 3:10-cv-2266-P, Dkt. Entry #16 at ¶4). Addressing the first prong of the *Davila* test, UHC contended that "Plaintiff has benefit assignments from the patients at issue, relied on these assignments to seek payment of benefits under the ERISA plan, and could have brought this action under ERISA as an assignee of the beneficiaries' rights." *Id.* at ¶ 14. Similarly, in the instant case, TCOS could have brought this action under ERISA as an assignee of the beneficiaries' rights, but chose not to.

In *SCCI*, UHC also argued that the second prong of the *Davila* test meant there was no independent duty, since there would be no lawsuit without an ERISA dispute. UHC specifically argued: "Since Plaintiff could have brought suit as an assignee of ERISA plan benefit rights, and there is no independent right of recovery against United separate and apart from the ERISA plans at issue, the resolution of Plaintiff's claims necessarily depends on interpretation of the applicable Plan terms." *Id.* at ¶15. Finally, UHC urged that, in order to determine whether a federal question exists, the court must go behind the pleadings to view the plan, claims, and explanation of benefits. *Id.* at ¶16-20.

Judge Solis granted the Motion to Remand, citing *Memorial* and holding that "the Hospital alleges that UHC representatives made affirmative representations to the Hospital that it would pay that amount and that the Hospital relied on those representations. Those representations were allegedly false. UHC's health benefits administrators owed the Hospital duties to convey accurate information about the Patients' coverage. These duties existed irrespective of the existence of an ERISA plan." (No: 3:10-cv-2266-P, Dkt. Entry #21). Judge Solis further noted that "despite the

plain language in the petition, UHC spends pages and pages arguing the Hospital is really suing IIHC for insurance benefits as the Patients' assignee . . . UHC concludes the Hospital has no right of recovery that is independent from the rights provided by ERISA." *Id*. Judge Solis disagreed, finding "[t]he Hospital's Petition unequivocally asserts fraud-based claims against UHC regarding the existence and amount of health insurance coverage. Nowhere does the Hospital allege it is suing to recover benefits as the Patients' assignee. Nor can the Petition be interpreted as asserting such claims." *Id.* Ultimately, Judge Solis held "[t]he law is well-established in the Fifth Circuit: 'ERISA does not preempt state law when the state law claim is brought by an independent, third-party healthcare provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health insurance coverage.'" *Id.*

UHC filed an extensive Motion for Reconsideration, but the case settled before that motion was decided. In its Motion for Reconsideration, UHC argued that the plaintiff "admits that it received payments for services under the plan but seeks additional payment on the basis of Defendants' alleged representations regarding the extent of coverage and their subsequent processing of [the provider's] claims." (No: 3:10-cv-2266-P, Dkt. Entry #22). UHC contended that because Judge Solis had found in another case that the provider's misrepresentation claims met what would become the second prong of the *Davila* test, he should follow that precedent. *Metroplex Infusion Care, Inc. v. Lone Star Cont. Corp.,* 855 F. Supp. 897, 899 (N.D. Tex. 1994) (Solis, J.) (distinguishing *Memorial* because it involved a representation regarding the existence of the patient's coverage, rather than the extent of coverage). However, Judge Solis's decision in *Metroplex* preceded the Fifth Circuit's decision in *Transitional*, on which he relied heavily in his *SCCI* decision. Therefore, examining *Metroplex* will not aid the Court.

## IV. ANALYSIS OF FACTS IN THIS CASE

UHC attempts to read out the second part of the *Davila* test, by asserting that because the instant lawsuit was borne out of an ERISA plan, all claims here are necessarily preempted. Such a broad reading is not supported by the Fifth Circuit's precedent, as was noted in *SCCI*, because a mere relationship with an ERISA plan does not necessarily subsume all state law claims. Here, Defendants make a sweeping argument for preemption of *all* of Plaintiff's claims.

UHC attempts to distinguish *SCCI* by noting that, in this case, TCOS has asserted causes of action for bad faith and breach of a duty of good faith and fair dealing. *Defs.' Resp.* at 19. In *SCCI*, the plaintiff similarly asserted violations of the Texas Insurance Code. That section provides:

> A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice: 1) defined by Subchapter B to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance; or 2) specifically enumerated in Section 17.46(b), Business and Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.

TEXAS INS. CODE § 541.151. Under Texas law, a bad faith claim requires proof that the insurer had "no reasonable basis" for denying or delaying payment of a claim under the terms of the plan, and that the insurer knew or should have known that fact. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). However, the fact that Defendants may have referenced the Plans to explain their decisions does not necessarily mean the claims are preempted by ERISA. ERISA was not intended to consume everything in its path. *Hook v. Morrison Milling Co.*, 38 F.3d 716, 786 (5th Cir. Tex. 1994).

Ultimately, TCOS sued UHC because of alleged misrepresentations that it would be reimbursed for the services of a surgeons' assistant. The Complaint alleges that TCOS would not

have performed the surgeries but for UHC's representations. Therefore, this case is not really about UHC's processing of claims under the Plans, but rather about UHC's alleged misrepresentations and non-disclosures. These are based on independent legal duties, notwithstanding that the surgeries were purportedly covered by an ERISA Plan.

Although UHC attached 300 pages from the Plans to its Notice of Removal, it cited no specific language that bars coverage for a surgeons' assistant during a gastric surgery. The Plans dictate when an employee is eligible for gastric surgery, and UHC does not dispute that the 57 patients qualified for the surgery. UHC states that the surgeons' assistant's services were denied payment because the "procedure code is not eligible for an assistant surgeon," but fails to invoke any such language in the Plans, so a close reading of the Plan's language seems unwarranted on this issue.

### 2. Demand Letter

In its Notice of Removal, UHC cites to Plaintiff's demand letter of December 11, 2012, which alleged that UHC's actions were violations of ERISA. *Notice of Removal*, p. 2-3. TCOS referenced the letter in its Petition in state court:

> UHC breached its obligation of good faith and fair dealing by refusing to pay valid claims, refusing to promptly pay such claims, and by failing to provide TCOS with interest for UHC's late payment on the few claims that were paid. UHC has exhibited a course of conduct that is unexplainable, demonstrating an intentional violation of State and ERISA statutes, along with its obligation to act in good faith and fair dealing in processing and paying insurance claims.

*Pet*. ¶ 10, n. 1. UHC argues the demand letter should be considered alongside the Petition because the demand letter is expressly referenced in and incorporated into the Petition. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (in the 12(b)(6) context, courts should "consider the complaint in its entirety, as well as other sources courts ordinarily examine ... in

particular, documents incorporated into the complaint by reference. . . . "). However, the fact that a portion of the demand letter is referenced in the Petition does not mean that all potential claims mentioned in the demand letter are incorporated as well. UHC's reliance on documents outside of the Petition ignores the rule that the plaintiff is master of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the case heard in a state court. *Caterpillar, Inc., v. Williams*, 482 U.S. 386 (1987).

## V. CONCLUSION

Having reviewed the arguments of both parties, the Court concludes Plaintiff's claims are not preempted by ERISA and thus **GRANTS** Plaintiff's Motion to Remand.

**SO ORDERED.**

February 27, 2014.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS